UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

FILED

JUAN SIGUI, JOSE SIGUI, JOSE CIPRIANO, :
JOSEPH MENDEZ, and JOSE L. SANTOS, :
individually and on behalf of other similarly :
situated individuals, :
          Plaintiffs :
          :
v. :
          :
M + M COMMUNICATIONS, INC., alias, :
COX RHODE ISLAND TELCOM, LLC, :
 d/b/a COX COMMUNICATIONS, alias, :
and COXCOM, LLC, d/b/a :
COX COMMUNICATIONS NEW ENGLAND, :
alias, and WILLIAM DOWLING, alias, :
         Defendants :

2014 OCT -8 A 9: 21

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

C.A. NO.:

<u>Jury Trial Demanded</u>

CA 14 - 4425

## COMPLAINT

### I.   <u>Introduction</u>

1.    This is an action brought by Plaintiffs, Juan Sigui, Jose Sigui, Jose Cipriano, Joseph Mendez, and Jose L. Santos ("Plaintiffs") against their former employer, M + M Communications, Inc., alias, Cox Rhode Island Telcom, LLC, d/b/a CoxCommunications, alias, and CoxCom, LLC, d/b/a Cox Communications New England, alias, and William Dowling, alias (hereinafter, collectively "Defendants" unless otherwise indicated expressly or by context), seeking compensatory, punitive, and liquidated damages, as well as attorneys' fees, costs and other equitable relief, arising out of violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and/or the Rhode Island Minimum Wage Act ("RIMWA"), R.I. Gen. Laws §28-12-1, *et seq.* and §28-14-1, *et. seq.* Plaintiffs also bring a claim against Defendants for racial discrimination in violation of 42 U.S.C. § 1981, *et seq.*

2.      With respect to the claims brought under the FLSA, this action is brought pursuant to the opt-in collective action provisions of the Fair Labor Standards Act, 29 U.S.C. § 216(b).

3.      Additionally and in the alternative, with respect to the FLSA claims, Plaintiffs bring this action as a multi party action.

4.      With respect to the RIMWA claims, Plaintiffs bring this action as a multi party action.

5.      With respect to the claim under 42 U.S.C. § 1981, Plaintiffs bring this action as a multi party action.

## II.      Parties

6.      Plaintiff Juan Sigui is a resident of the Town of Johnston, County of Providence, and State of Rhode Island, and at all times relevant to this action was an employee, within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA and R.I. Gen. Laws § 28-12-2(5) of the RIMWA, employed by Defendants.

7.      Plaintiff Jose Sigui, is a resident of the City of Providence, County of Providence, and State of Rhode Island, and at all times relevant to this action was an employee, within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA and R.I. Gen. Laws § 28-12-2(5) of the RIMWA, employed by Defendants.

8.      Plaintiff Jose Cipriano is a resident of the City of Providence, County of Providence, and State of Rhode Island, and at all times relevant to this action was an employee, within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA and R.I. Gen. Laws § 28-12-2(5) of the RIMWA, employed by Defendants.

9.      Plaintiff Joseph Mendez is a resident of the City of Cranston, County of Providence, and State of Rhode Island, and at all times relevant to this action was an employee,

within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA and R.I. Gen. Laws § 28-12-2(5) of the RIMWA, employed by the Defendants.

10.     Plaintiff Jose L. Santos is a resident of the City of Jacksonville, State of Florida, and at all times relevant to this action was an employee, within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA and R.I. Gen. Laws § 28-12-2(5) of the RIMWA, employed by Defendants.

11.     Defendant M + M Communications, Inc. ("Defendant M + M"), alias is a corporation duly organized and incorporated under the laws of the State of Rhode Island with a principal place of business located at 77 Gilbane Street, Warwick, Rhode Island.

12.     Defendants Cox Rhode Island Telcom, LLC, d/b/a Cox Communications, alias and CoxCom, LLC, d/b/a Cox Communications New England, alias (hereinafter, collectively referred to as "Defendant Cox") are corporations organized under the laws of the State of Delaware with a principal place of business located at 1400 Lake Hearn Drive, Atlanta, Georgia.

13.     Defendant William Dowling, alias, at all times relevant to this action, was the General Manager of the Defendants' 77 Gilbane Street, Warwick, Rhode Island facility ("Warwick Facility") and was acting directly or indirectly in the interest of Defendants as an employer, in relation to Plaintiffs as employees.

*FLSA Liability Allegations*

14.     At all relevant times, Defendants were engaged in the stream of interstate commerce and were the employer of Plaintiffs and other similarly situated individuals within the meaning of 29 U.S.C. § 203(d) and R.I. Gen. Laws § 28-12-2(6) of the RIMWA.[1]

---

[1] *See Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007)(corporate officer personally liable because he was instrumental in causing corporation to violate FLSA); *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998); *see also Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991), *and cases cited therein*.

15.   Defendants are and, at all times hereinafter mentioned, were engaged in related activities performed through unified operation or common control for a common business purpose and they are and, at all times hereinafter mentioned, were an enterprise within the meaning of 29 U.S.C. § 203(r).

16.   At all times hereinafter mentioned, Defendants on a regular, consistent and recurrent basis, as part of the Defendants' regular course of business of distributing product in interstate commerce, employed Plaintiffs and other similarly situated individuals in the activities of said enterprise engaged in commerce or in the production of goods for commerce, including handling, selling or otherwise working on goods or materials that have been moved in or produced in commerce.

17.   Said enterprise, at all times hereinafter mentioned, has had an annual gross volume of sales made or business done in the amount of not less than $500,000.00.

18.   Therefore, the Plaintiffs and other similarly situated individuals have been employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s).

### *FLSA Collective Action Allegations*

19.   The aforementioned Plaintiffs bring this action on behalf of themselves and all other similarly situated current and former employees of Defendants, who were and/or are affected by the actions, pay schemes, policies and procedures of Defendants as described herein.

20.   In addition, the aforementioned Plaintiffs bring this action in their individual capacities, separate and apart from the collective action claims set forth herein.

21.   With respect to the collective action claims under the FLSA, the Plaintiffs seek relief on behalf of two classes.

22.    **The First FLSA collective action class** is defined as follows:

All individuals employed as Field Service Technicians (or other comparable positions) who were hired and paid by Defendants by and through Defendant M + M to perform installation, maintenance, and/or construction services on cable television, Internet, and/or telephone lines and/or equipment for customers of Defendants obtained by and through Defendant Cox and were subject to the following common practices or policies of the Defendants, at any time from three (3) years before the filing of this Complaint to the present:

a.    Who were paid IRS Form 1099 compensation; and,
b.    Who worked more than forty (40) hours; and,
c.    Were not paid at least one and a half times their regular rate of pay for all hours worked during overtime hours; and/or,
d.    Were not paid wages for all hours worked.

23.    **The Second FLSA collective action class** is defined as follows:

All individuals employed as Field Service Technicians (or other comparable positions) who were hired and paid by Defendants by and through Defendant M + M to perform installation, maintenance, and/or construction services on cable television, Internet, and/or telephone lines and/or equipment for customers of Defendants obtained by and through Defendant Cox and were subject to the following common practices or policies of the Defendants, at any time from three (3) years before the filing of this Complaint to the present:

a.    Who were paid IRS Form W-2 wages; and,
b.    Who worked more than forty (40) hours per week; and,
c.    Were not paid at least one and a half times their regular rate of pay for those hours worked during overtime hours; and/or
d.    Were not paid wages for all hours worked.

24.    The Plaintiffs are similarly situated with other Field Service Technicians or other similarly titled positions (collectively referred to as "Field Service Technicians") employed by Defendants in that they were all subject to the same payroll practices, policies and procedures of Defendants, performed similar work under similar working conditions, and were subject to the same unlawful practices alleged in this Complaint and sustained the same or similar damages as a result.

25.     Each of the named Plaintiffs are members of both FLSA classes as each was employed by the Defendants for periods of time as a misclassified Independent Contractor and as an employee during the three (3) years before the filing of this Complaint to the present.

26.     Plaintiffs reserve the right to amend said class definitions consistent with information obtained through discovery.

### III.     Jurisdiction

27.     The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because it asserts claims arising under Federal law; specifically, the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* and 42 U.S.C. § 1981.  Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case and controversy.

### IV.     Venue

28.     Venue is proper in this Court insofar as the Defendants are doing business in Rhode Island and; therefore, are deemed to reside in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. § 1391.  Moreover, a substantial part of the acts and/or omissions giving rise to the claims occurred in the District of Rhode Island.

### V.     Material Facts

29.     Defendant Cox provides cable, telephone, and Internet communications services to residents and business in the State of Rhode Island and throughout the United States.

30.     At all relevant times, Defendant Cox contracted with Defendant M + M to perform on-site installation, maintenance, and construction services on cable television, Internet, and telephone lines and equipment for customers in and around the State of Rhode Island.

31.     On information and belief, all of Defendant M + M's business came from Defendant Cox during the relevant time period.

32.     Indeed, in filings with the Rhode Island Secretary of State, Defendant M + M described "the character of business conducted" in the state as "cable TV installs contracted through Cox Cable."

33.     At all relevant times, Plaintiffs and First FLSA Class Plaintiffs and Second FLSA Class Plaintiffs (hereinafter collectively referred to as "Class Plaintiffs") worked for Defendants as Field Service Technicians.

34.     Plaintiffs' and Class Plaintiffs' job duties as Field Service Technicians included performing on-site installation, maintenance, and/or construction work on cable television, Internet, and/or telephone lines and/or equipment for residential and business customers of Defendant Cox in and around the State of Rhode Island (hereinafter referred to as the "work").

35.     At all relevant times, Defendants employed individuals such as the Plaintiffs and Class Plaintiffs as Field Service Technicians to perform the work.

**A.     Misclassification of Plaintiffs and First FLSA Collective Class Plaintiffs**

36.     On information and belief, as a condition of employment, Plaintiffs and First FLSA Class Plaintiffs were required to sign documents prepared by Defendant M + M that misrepresented the true relationship between them and Defendants as Independent Contractor when the relationship was legally that of employee and employer.

37.     At the same time that Defendants sought to designate Plaintiffs and First FLSA Class Plaintiffs as Independent Contractors, they treated them as employees and exercised nearly total control over the manner and means by which they performed their job duties, including what, where, how and when they performed their job duties and for whom.

38.     Defendants' control over Plaintiffs and First FLSA Class Plaintiffs, included, but was not limited to the following:

        a.     Supplying and mandating the type, style, and color of uniform.

b.   Requiring that Defendants' business names—not the name of each Plaintiff or the individual First FLSA Class Plaintiffs—be prominently displayed on the uniform.

c.   Requiring that Defendants' business names—not the name of each Plaintiff or the individual First FLSA Class Plaintiffs— be prominently displayed on the work van.

d.   Providing the supplies necessary to perform the work.

e.   Supplying equipment necessary to perform the work.

f.   Providing or arranging for the training necessary to perform the work.

g.   Providing the customers for whom to perform the work.

h.   Specifying the work to be performed.

i.   Mandating how the work is to be performed.

j.   Scheduling the time when the work is to be performed.

k.   Establishing the manner in which the work is to be performed.

l.   Assigning and controlling the amount and type of work performed.

m.   Receiving all customer complaints and feedback on the work performed.

n.   Inspecting the work performed.

o.   Establishing the amount and manner by which compensation to First FLSA Class Plaintiffs is calculated and paid.

p.   Mandating attendance at weekly meetings.

q.   Mandating that First FLSA Class Plaintiffs report to Defendants' Warwick Facility Monday through Saturday at a designated time.

39.     Moreover, Plaintiffs and First FLSA Class Plaintiffs were not permitted to bid on, refuse, or select the work assignments issued by Defendants—they had to accept the work assigned by Defendants.

40.     Notwithstanding the foregoing, for all or a portion of their employment during the relevant period, Defendants misclassified and paid Plaintiffs and First FLSA Class Plaintiffs as Independent Contractors and annually issued them IRS Forms 1099 when they should have been paid wages as employees and annually issued IRS Forms W-2 in violation of, *inter alia*, R.I. Gen. Laws § 28-14-19.1.

### B.     Allegations Common to All Classes and Plaintiffs

41.      Defendants maintained and enforced policies that required Plaintiffs and Class Plaintiffs to report to work in a designated uniform supplied by the Defendants.

42.     Defendants maintained and enforced policies that required Plaintiffs and Class Plaintiffs to attend weekly meetings at the Warwick facility.

43.     Defendants maintained and enforced policies that required Plaintiffs and Class Plaintiffs to report to work Monday through Saturday at or about 7:30 a.m.

44.     Defendants maintained and enforced policies that required Plaintiffs and Class Plaintiffs to call the office prior to the start of the shift when they were unable to work.

45.     Defendant Cox scheduled appointment times for the work to be performed and would provide work orders to Defendant M + M, which would in turn assign the work to Plaintiffs and Class Plaintiffs.

46.     At the beginning of each shift, Plaintiffs and Class Plaintiffs who were assigned work received documents from Defendants that identified (a) the customers they were required to service that day, (b) the work that Defendants required them to perform for each customer, and (c) the time of day that Defendants required them to provide the work to each customer.

47.     After collecting all of the parts and supplies that were required to perform the assigned work, Plaintiffs and Class Plaintiffs traveled to the location of each customer and completed the work that Defendants directed them to perform.

48.     Plaintiffs and Class Plaintiffs were not allowed to contract with the customers of Defendant Cox to perform other services that were not previously purchased by the customers from Defendants.

49.     After completing the work assigned by Defendants, Plaintiffs and Class Plaintiffs were not paid by customers of Defendant Cox.

50.     Plaintiffs and Class Plaintiffs did not determine how much to charge the customers for the work.

51.     Rather, Defendants set the prices and performed the billing for the services provided by Plaintiffs and Class Plaintiffs to the customers of Defendant Cox.

52.     Defendants fixed the compensation of Plaintiffs and Class Plaintiffs through an elaborate task based "point system" designed to purportedly approximate the time needed to complete each enumerated task.

53.     Nevertheless, Defendants and Class Plaintiffs were often required to perform numerous other tasks for which they were not compensated.

54.     After completing their work, Plaintiffs and Class Plaintiffs prepared documents identifying the work performed for the customers of Defendant Cox and submitted those documents to Defendant M + M.

55.     Defendant M + M in turn paid Plaintiffs and Class Plaintiffs according to fixed rates for the assigned work they completed.

56.     Plaintiffs and Class Plaintiffs did not negotiate their own rates and pay structure with Defendants or submit a bid for performance of the work.

57.     Rather, Plaintiffs and Class Plaintiffs were each paid fixed rates for the assigned work completed, that Defendants unilaterally determined and fixed.

58.     The work performed by Plaintiffs and Class Plaintiffs was an integral part of Defendants' business.

59.     Instead of properly classifying and paying all Field Service Technicians as employees, Defendants classified and paid Plaintiffs and First FLSA Class Plaintiffs as Independent Contractors for all or a portion of their employment during the relevant period.

60.     Indeed, during the relevant period, Defendants treated Plaintiffs and certain Class Plaintiffs as Independent Contractors and then subsequently reclassified them as employees and vice versa, without any corresponding change in their job duties, supervision, or control over the work.

### Defendant Cox's Control over the Operations of Defendant M + M and Employment of Plaintiffs and Class Plaintiffs

61.     Defendant Cox exercised near total control and authority over the employment of the Plaintiffs and Class Plaintiffs.

62.     Defendant M + M's exclusive source of business was performing work for Defendant Cox customers.

63.     Plaintiffs and Class Plaintiffs provided work exclusively for customers of Defendant Cox.

64.     Accordingly, Defendant M + M, and by extension, Plaintiffs and Class Plaintiffs, were totally dependent upon Defendant Cox for their continued employment.

65.     The work performed by Plaintiffs and Class Plaintiffs constituted a discrete line-job that was an integral part of Defendant Cox's product and overall business objective.

66.     Defendant Cox devised and imposed a task based "point system" of compensation by which Plaintiffs and Class Plaintiffs were compensated for performing the work.

67.     In addition, on information and belief, Defendant Cox monitored how much time it took Plaintiffs and Class Plaintiffs to complete the work and would from time to time lower the point value assigned to various tasks and/or the amount paid per point.

68.     Indeed, on at least one occasion, a representative of Defendant Cox addressed a meeting with Plaintiffs and Class Plaintiffs at the Warwick facility and stated that the point values for certain tasks were being reduced because Plaintiffs and Class Plaintiffs were performing the work too quickly.

69.     Defendant Cox required Plaintiffs and Class Plaintiffs to wear uniforms and apparel indicating that they were performing work for Defendant Cox.

70.     Defendant Cox required Plaintiffs and Class Plaintiffs to display a sign on their vehicles indicating that they were performing work for Defendant Cox.

71.     Defendant Cox required Plaintiffs and Cox Plaintiffs to leave Defendant Cox printed materials such as "welcome kits" and/or other such business documentation and pamphlets for customers for whom they performed work.

72.     Additionally, Plaintiffs and Class Plaintiffs used and/or installed Defendant Cox's equipment, including, but not limited to, cable boxes, wires, and connectors.

73.     For instance, Plaintiffs and Class Plaintiffs established connectivity with cable, telephone, and internet communications lines and systems owned by Defendant Cox, and they performed work on telephone lines under the auspices of the license held by Defendant Cox.

74.     Defendant Cox also closely monitored the performance of work by Plaintiffs and Class Plaintiffs.

75.     For instance, Defendant Cox exercised its quality control authority by inspecting the work performed by Plaintiffs and Class Plaintiffs.

76.     Additionally, upon information and belief, Defendant Cox contacted customers serviced by Plaintiffs and Class Plaintiffs to conduct customer satisfaction surveys.

77.     If Defendant Cox concluded the work was not performed properly, Defendant Cox would "back charge" an amount fixed by Defendant Cox that was deducted from paychecks of Plaintiffs and Class Plaintiffs.

### C.     Wage and Hour Violations under the FLSA and RIMWA

78.     Plaintiffs and Class Plaintiffs regularly and consistently worked more than forty (40) hours per week, but Defendants failed to pay them one and one half times their regular rate of pay for the hours worked weekly in excess of forty (40).

79.     Additionally, Plaintiffs and Class Plaintiffs were deprived of wages when Defendants refused to compensate them for all time worked, including but not limited to the failure to compensate for the following time.

a.      Reporting to the Warwick Facility when no work was assigned.

b.      Loading the work van at the start of the day and unloading the work van at the end of the day.

c.      Attendance at mandatory company meetings.

d.      Traveling to customers' homes or places of business.

e.      Waiting for assignment of or to perform the work for customers.

f.      Reporting to locations for work when the customers failed to show.

g.      Reporting to locations to advise customers that work could not be performed.

h.      Reporting to locations where they were unable to perform the work due to technological or other reasons.

    i.     Performing additional tasks, including an on-site inspection of the customer's existing Defendant Cox services and repair of any deficiencies found.

    j.     Returning to a location to complete, revise, or repair work previously performed.

80.    Plaintiffs and Class Plaintiffs were required to show up at the offices of Defendant M + M every morning, and if they were not assigned work they were sent home without compensation in violation of R.I. Gen. Laws § 28-12-3.2.

81.    Plaintiffs and Class Plaintiffs were required to attend mandatory weekly meetings at the Warwick Facility without compensation.

82.    Plaintiffs and Class Plaintiffs were required to report to the customers' job site and inspect the site, and if there was assigned work which could not be completed for any reason, Plaintiffs and Class Plaintiffs were not compensated.

83.    Additionally, Plaintiffs and Class Plaintiffs were frequently required to perform work at the customers' job site without compensation.

84.    For instance, Plaintiffs and Class Plaintiffs would report to a customers' home to perform a discrete task and were forced to spend many hours unpaid fixing other problems such as running new wiring and/or configuring the internet modem, the cable box, and/or the phone lines.

85.    Defendants improperly charged and involuntarily deducted from Plaintiffs' and Class Plaintiffs' paychecks the cost of specialized equipment and apparel necessary to perform the work, including magnetic signs for the work van, meters, hazard cones, ladders, crimpers, strippers, uniforms, and safety vests.

86.    Indeed, Defendants even improperly charged and involuntarily deducted from Plaintiffs' and Class Plaintiffs' paychecks the cost of using a company van to perform the work.

87.   Defendants would "back charge" Plaintiffs and Class Plaintiffs for various reasons, including performing purportedly deficient or incomplete work or failing to submit time sheets, by involuntarily and improperly deducting monetary penalties from their paychecks, according to schedules unilaterally established by Defendants.

88.   Even though Defendants purported to pay Plaintiffs and Class Plaintiffs for work performed based on "points" allotted to each of the various tasks, Defendants required Plaintiffs and Class Plaintiffs to submit weekly time sheets documenting time spent performing the work, and expressly instructed Plaintiffs and Class Plaintiffs not to record more than forty (40) hours of time worked in any one workweek.

### *Minimum Wage and Minimum Shift and Overtime Pay*

89.   At all relevant times, Plaintiffs and Class Plaintiffs were non-exempt employees[2] entitled to payment of wages for all hours worked,[3] for overtime wages as defined under applicable law,[4] and for minimum shift pay under the RIMWA.[5]

---

[2]   It should be pointed out that any exemption from the payment of minimum wage or overtime are "narrowly construed against the employers seeking to assert their application," *Arnold v. Ben Kanowsky, Inc.* 361 U.S. 388,392, 80 S.Ct. 453, 456, 4 L. Ed. 2d 393 (1960), with the burden of proving the exemption placed "upon the employer." *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896, 900 (3rd Cir. 1991); *Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694 (1966).

[3]   *See Norceide v. Cambridge Health Alliance*, 814 F.Supp.2d 17, 23-25 (D. Mass 2011)(The court held that where compensation was based on twenty-six (26) hours of work, the company violated the minimum wage provision of the FLSA by not paying the employees for the hours worked above 26.   In effect, the employer was getting free hours of work from the employees); *see also*, 29 C.F.R. § 778.113(a)(when a salaried employee has a fixed workweek less that forty (40) hours, she is entitled to her hourly equivalent for all additional hours worked up until forty hours and time and one half for every hour worked above hour forty); *see also* R.I. Gen. Laws § 28-12-3 (requiring that employees be paid a minimum wage *per* hour).

[4]   Under the FLSA, every employer in commerce shall pay its employees time and one half (1 ½) for all hours worked over forty (40).   29 U.S.C. §§ 206 and 207.   The RIMWA mirrors the FLSA in that it provides that every employer shall pay the minimum wage prescribed by law and one and one-half (1 ½) the rate of their regular compensation for all hours worked over forty (40).   R.I.G.L. § 28-12-1, *et seq.*

[5]   R.I. Gen. Laws § 28-12-3.2 (where an employee reports for duty at the beginning of a work shift and the employer offers no work for him or her to perform, the employer must pay the employee wages of not less than three (3) times the regular hourly rate).

90.     Despite the fact that Plaintiffs and Class Plaintiffs were non-exempt employees, Defendants failed or refused to pay Plaintiffs wages for all hours worked and/or for overtime pay[6] and/or minimum shift pay on numerous workweeks as required by the FLSA and RIMWA.[7]

### *Work Suffered or Permitted*

91.     Defendants are liable for the payment of wages or overtime wages for all hours Plaintiffs and Class Plaintiffs were "suffered or permitted to work"—regardless of whether the work was requested, authorized or needed, whenever the Defendants knew or had constructive knowledge that the work was being performed.[8]

92.     Defendants knew or had reason to believe that Plaintiffs and Class Plaintiffs were performing hours of work for which they were not being compensated by Defendants.

93.     Moreover, Defendants knew or had reason to believe that Plaintiffs and Class Plaintiffs were working in excess of forty (40) hours weekly on a regular basis.

94.     This is so insofar as Defendants typically scheduled Plaintiffs and Class Plaintiffs to work six (6) days each week and otherwise assigned work each week to Plaintiffs and Class Plaintiffs that could not realistically be completed without working more than forty (40) hours.

---

[6] It is black letter law than an employee of a private employer may not "volunteer," in whole or in part, to perform work for his or her employer, insofar as an employee may not waive his or her right to minimum wage and overtime pay due under the FLSA. *See Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 740 (1981); *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945). Nor may FLSA rights be abridged, waived, or modified by contract or custom. *See Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 602-03 (1944)("The Fair Labor Standards Act was not designed to codify or perpetuate those customs and contracts which allow an employer to claim all of an employee's time while compensating him for only a part of it. Congress intended, instead, to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act. Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights.")(footnote omitted).

[7] No agreement to work for less than the applicable wage rate or to otherwise work under terms and/or conditions in violation of applicable law is a defense to an action brought pursuant to the RIMWA or the FLSA. *See, e.g.,* R.I.G.L. §28-14-19.2 (c)

[8] As long as the employer knows or has reason to believe that and employee is continuing to work and the time is working time, the employee is entitled to the payment of wages from the employer. *See* 29 C.F.R. § 785.11.

95.     Indeed, this is the obvious reason why Defendants instructed Plaintiffs and Class Plaintiffs not to submit weekly timesheets recording more than forty (40) hours.

96.     By assigning such work, Defendants knew or had reason to believe that Plaintiffs and Class Plaintiffs were regularly working in excess of forty (40) hours each week.

97.     Accordingly, Defendants had constructive, if not actual, knowledge that Plaintiffs and Class Plaintiffs regularly performed overtime work for which they were not compensated.[9]

98.     Nevertheless, Defendants failed or refused to pay Plaintiffs and Class Plaintiffs the compensation to which they were legally entitled for all overtime hours worked.[10]

99.     Even where an employer claims lack of any direct knowledge of unclaimed overtime hours worked, knowledge by supervisors of an employee's overtime is imputed to the employer for purposes of determining an employer's liability under the FLSA.[11]

### *Defendants Jointly Liable as Employers*

100.    In light of the degree of control exerted by Defendant Cox over the operations of Defendant M + M generally and the employment of Plaintiffs and Class Plaintiffs specifically, as well as the integrated nature of the operations of Defendant Cox and Defendant M + M as it relates to work performed for Defendant Cox customers as alleged herein, and the direct control

---

[9] *An employer is said to have "constructive knowledge" of its employee's overtime work when it has reason to believe that its employee is working beyond his shift.* Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306 (11th Cir. 2007).

[10] Once an employer knows or has reason to know that an employee is working overtime, *it cannot deny compensation even where the employee fails to claim overtime hours or the work was not requested.* Holzapfel v. Town of Newburgh, N.Y., 145 F.3d 516 (2d Cir. 1998); *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693 (E.D. Tex. 2007).

[11] *See* 29 U.S.C.A. §§203(g), 207(a)(1); *Cunningham v. Gibson Elec. Co., Inc.*, 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999). Moreover, *where an employer claims a lack of knowledge of employee's overtime, but the evidence strongly supports an inference of deliberate ignorance, the proper conclusion, for purposes of the FLSA is that the employer knew about the overtime hours.* Id. at 976. Simply put, it is the duty of the management to exercise its control and see that *work is not performed* if it does not want it to be performed. 29 C.F.R. § 785.13; *Prise v. Alderwoods Grp., Inc.*, 817 F. Supp. 2d 651 (W.D. Pa. 2011). The mere promulgation of a rule against such work is not enough. *Id.* Employers cannot sit back and accept the benefits without compensating for them. *Id.*

exerted by Defendant M + M and Defendant Dowling with respect to the scheduling and recording of hours and payment to the Plaintiffs and Class Plaintiffs for time spent performing the work, each of the Defendants are jointly and severally liable for the violations of the FLSA and RIMWA alleged herein.[12]

### D.   Racial Discrimination in Violation of 42 U.S.C. § 1981

101.   The Plaintiffs are all members of the Hispanic race.[13]

102.   On information and belief, Defendants engaged in the practice of intentionally hiring Hispanics as Field Service Technicians and subjecting them to the unlawful wage and hour practices alleged herein based, in whole or in part, on their racial minority status.[14]

103.   On information and belief, Defendants were motivated in hiring Plaintiffs, in whole or in part, by the belief that, in light of the Plaintiffs racial minority status, it was unlikely they would be aware of, assert, and/or seek means of redress for violations of applicable law designed to protect employees.

---

[12] The FLSA defines employer, employee, and employ 29 U.S.C. §203 (d), (e) and (g), respectively. The Department of Labor has construed these terms to mean that more than one employer may employ the employee during the same workweek and that these employers may be jointly responsible for compliance with the FLSA for this employee. *See* 29 C.F.R. §791.2. When employment "by one employer is not completely disassociated from employment by the other employer(s)," joint employment exists. 29 C.F.R. § 791.2(a). A joint employment relationship also generally will be found where there is an arrangement between the employers to share an employee's services or where one employer is acting in the interest of the other employer in relation to the employee. 29 C.F.R. 791.2(b)(1)-(2). "Where two or more employers stand in the position of 'joint employers' and permit or require the employee to work more than the number of hours specified in section 7(a), both the letter and the spirit of the statute require the payment of overtime." 29 C.F.R. § 791.2(a). *See also* footnote 1, *supra.*

[13] "Based on the history of § 1981, [the U.S. Supreme Court] ha[s] little trouble in concluding Congress intended to protect from discrimination identifiable classes of persons who are subject to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination..." *Saint Francis College v. Al-khazraji,* 481 U.S. 604, 613 (1987). "Indeed race and national origin are often identical, for example when an individual hails from a nation whose populace is composed primarily of a particular race." *LI v. Reade,* 609 F.Supp.2d 148, 151 (D.Mass. 2009).

[14] Less than 10% of Defendant M + M's Field Service Technicians are white. Such a disproportionate percentage of Hispanic employees can support a claim of discrimination. *See Jones v. City of Boston,* 752 F.3d 38, 46 (1st Cir. 2014)( noting that the U.S. Supreme Court allows for a prima facie case of disparate impact on "'essentially a threshold showing of a significant statistical disparity...and nothing more.'")(internal citations omitted)

104.     On information and belief, Defendants would not have hired Plaintiffs and subjected them to the unlawful wage and hour practices alleged herein, but for, in whole or in part, their racial minority status.[15]

105.     Defendants have thereby intentionally discriminated against Plaintiffs with respect to the terms and conditions of their employment on the basis of their race.

### E.     Damages

106.     During the three (3) years prior to the filing of the Complaint to the present, Defendants required Plaintiffs and Class Plaintiffs to regularly work hours for which they were not compensated.

107.     During the three (3) years prior to the filing of the Complaint to the present, Defendants required Plaintiffs and Class Plaintiffs to regularly work hours each workweek in excess of forty (40) hours without pay or overtime pay.

108.     Both the FLSA and RIMWA require employers to pay their non-exempt employees for every hour worked.

109.     Both the FLSA and the RIMWA require employers to pay their non-exempt employees at a rate not less than one and one-half (1 ½) times their regular rate of pay for all hours worked in excess of forty (40) in any one (1) workweek.  29 U.S.C. § 207(a)(1); R.I. Gen. Laws §28-12-4.1.

110.     Defendants willfully and repeatedly violated the provisions of the FLSA and the RIMWA by failing to pay Plaintiffs and Class Plaintiffs for all hours worked and for failing to compensate them at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) in any one (1) workweek.

---

[15] "All persons within the jurisdiction of the United States shall have the same right…to make and enforce contracts." 42 U.S.C. § 1981(a).  "'make and enforce contracts' includes…the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

111.    On information and belief, Defendants have willfully and repeatedly violated 29

USC §§211(c) and 215(a)(5) of the FLSA by failing to make, keep and preserve adequate and

accurate records of Plaintiffs' and Class Plaintiffs' wages, hours, and other conditions and

practices of employment as prescribed by regulations duly issued pursuant to authority granted in

the FLSA and found in 29 C.F.R. §516.2.

112.    As a result of the Defendants' concerted acts and/or omissions, including, but not

limited to, those described herein, Plaintiffs and Class Plaintiffs have sustained loss of wages,

overtime pay, and other compensation and/or benefits of employment and have suffered

emotional distress and other great damage.

### VI.    Claims for Relief

113.    Plaintiffs and Class Plaintiffs incorporate the allegations contained in ¶¶1 through

112 above in the counts set forth below.

### Count One
#### *Violation of FLSA, 29 U.S.C. §201, et seq.*

114.    Defendants, by their individual and/or concerted acts and/or omissions, including,

but not limited to, those described herein, violated the FLSA, thereby causing Plaintiffs and

Class Plaintiffs to suffer damages as aforesaid, for which they are entitled to relief pursuant to 29

U.S.C. §216(b).

### Count Two
#### *Violation of RIMWA, R.I. Gen. Laws §28-12-1, et seq.*

115.    Defendants, by their individual and/or concerted acts and/or omissions, including,

but not limited to, those described herein, violated the RIMWA, thereby causing Plaintiffs to

suffer damages as aforesaid, for which they are entitled to relief pursuant to R.I. Gen. Laws § 28-

14-19.2.

**Count Three**
*Misclassification in Violation of R.I. Gen. Laws §28-14-19.1*

116.    Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated R.I. Gen. Laws § 28-14-19.1, thereby causing Plaintiffs to suffer damages as aforesaid, for which they are entitled to relief pursuant to R.I. Gen. Laws § 28-14-19.2.

**Count Four**
*Racial Discrimination in Violation of 42 U.S.C. § 1981*

117.    Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated 42 U.S.C. § 1981 *et seq.* by discriminating against Plaintiffs based on their race, thereby causing Plaintiffs to suffer damages aforesaid, for which they are entitled to relief pursuant to 42 U.S.C. § 1981a.

**VII.    Prayers for Relief**

**WHEREFORE**, Plaintiffs and/or Class Plaintiffs pray that this Honorable Court grant the following relief:

1.    A declaratory judgment declaring that the Defendants violated the wage and overtime payment requirements under the FLSA and the RIMWA and the prohibition against misclassification under R.I. Gen. Laws § 28-14-19.1 in the manner complained of herein.

2.    An injunction enjoining Defendants from violating the wage and overtime payment requirements under the FLSA and the RIMWA and the prohibition against misclassification under R.I. Gen. Laws § 28-14-19.1 in the manner complained of herein.

3.    An award of compensatory damages.

4.    An award of liquidated damages pursuant to 29 U.S.C. § 216(b).

5.    An award of liquidated damages in an amount up to two times the amount of wages and/or benefits owed pursuant to R.I. Gen. Laws § 28-14-19.2.

6.     An award of a civil penalty as provided under R.I. Gen. Laws §§ 28-14-19.1 and 19.2.

7.     An award of punitive damages.

8.     An award of reasonable attorneys fees and costs of litigation pursuant to 29 U.S.C. §216(b).

9.     An award of reasonable attorney's fees and costs pursuant to R.I. Gen. Laws § 28-14-19.2.

10.    An award of other appropriate equitable relief pursuant to 29 U.S.C. §216(b).

11.    An award of other appropriate equitable relief or penalties pursuant to R.I. Gen. Laws § 28-14-19.2.

12.    An award of such other and further relief as this Honorable Court deems just and proper.

## VIII.   Demand for Jury Trial

The Plaintiffs and Class Plaintiffs hereby demand a trial by jury on all counts so triable.

## IX.   Designation of Trial Counsel

The Plaintiffs and Class Plaintiffs hereby designate Richard A. Sinapi, Esquire as trial counsel.

Plaintiffs and Class Plaintiffs,
By their attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

Dated:  October 8, 2014

Richard A. Sinapi, Esq.   (#2977)
175 Hillside Road
Cranston, RI 02920
Phone: (401) 944-9692; FAX: (401) 943-9040
Email: ras@sinapilaw.com